## LOUIS M. FINGER

### v.

### JACOB H. HAHN.

The defendant covenanted with complainant, who bought his retail butcher business, " not to carry on the retail butcher business on his own account, or operate any butcher business except a wholesale butcher business, within the corporate limits of the city of Newark" during a period not yet expired. He afterward engaged in the retail grocery business, and then sold it to a third party, who employed defendant to take charge of the retail butcher business in connection with the grocery. Defendant did so, buying all the meats &c., and thereby injured complainant's trade considerably.—*Held*, that he would be enjoined from continuing the business.

Mr. *F. E. Bradner,* for complainant.

Mr. *G. H. Lambert,* for defendant.

Bird, V. C.

The complainant, Finger, purchased the butcher business of the defendant, Hahn, in which he was engaged in the city of Newark. Hahn entered into a covenant, in these words :

" Does hereby covenant to and with the party of the second part  *  *  * that he will not carry on the retail butcher business on his own account, or operate any butcher business, except a wholesale butcher business, within the corporate limits of the city of Newark " —

during a period not yet expired. Soon thereafter Hahn commenced the grocery business. This proving a failure, he desired to sell it, to do which he had an opportunity, provided the purchaser, one Horst, could establish, in connection therewith, the butcher business. Hahn sold to Horst, and the butcher business was established in connection with the grocery business. Horst employed Hahn to assist in the butcher business as well as the grocery. Hahn says he was to receive $30 a week as compensation for his services, but didn't know whether that would be his compensation or not if he could not cut meats. Hahn bought all the meats for the establishment, and, as I understand his testimony, continues to do so. The prayer of the bill is that Hahn may be restrained from carrying on the retail butcher business on his own account, or operating any butcher business, except a wholesale butcher business, within the corporate limits of the city of Newark during the period fixed by the agreement. It is strenuously insisted that there has been no violation of the agreement. Let us see if Hahn has engaged in any business which seems reasonably to be a violation of his covenant. He engaged with Horst to cut meats for him as well as to assist in the grocery business. It may be said that this is · not proof of his " carrying on the retail butcher business on his own account," but it cannot be claimed that it does not bring him within the other phrase, " or operating any butcher business." I cannot perceive that the mere fact of his being employed at the salary protects him against this covenant. In my judgment, the letter and spirit of the covenant are just as certainly violated as though he were in partnership with Horst, or had the entire ownership

and control of the business himself. In common sense or reason, the object of every such covenant is to get rid of the competition which endangers the business of the purchasing party ; to remove beyond reach the influence of the vendor's popularity, business integrity, knowledge or skill, and to make it impossible for personal influences and friendly considerations, arising from long-continued business acquaintance, exerting themselves to the prejudice of such purchaser. Without these considerations, such contracts are quite meaningless. But not one of these influences is there which will not be felt or brought to bear, to a greater or less extent, if the vendor engage in business even as a clerk. This reasoning is established beyond controversy in this very case; for persons who had been employed by Hahn before he sold to Finger continued to buy meats of Finger until a short time after Horst purchased the grocery business of Hahn and opened in connection therewith the butcher business, when they left Finger and made their purchases of Horst. So many did this that it certainly was very damaging to Finger.

Now, there is nothing whatever to show that these customers left Finger and went to Horst on account of Horst, or because of his skill in the business. Indeed, I think that Horst was a stranger to them, absolutely, and was a comparative stranger in the city of Newark, and to the butcher business, although he had formerly been engaged in business in Decatur, Illinois. How, then, can the mind escape the conclusion that Hahn, engaging with Horst as clerk, and assisting in the butcher shop as well as in the grocery, did violate his covenant not to operate any butcher business, except to wholesale. Certainly he injured Finger. The legal effect of this the defendant's counsel endeavors to overcome by insisting that it does not appear that Hahn really did any act which was in violation of his contract. This insistment, I think, is overcome by the facts disclosed in his testimony. Mr. Hahn says, in answer to certain questions, viz. :

" *Q.* What do you do for Mr. Horst at the present time ; how are you engaged ?

" *A.* I do all the buying for him for the place.

" *Q.* Buying what ?

"A. Of everything that he sells there—meats, groceries, vegetables, fruits, and everything."

Now, I think every one will say that no part of the butcher business is of greater importance than that of buying, and that the experience and skill of Hahn, in that particular, was of great value to Horst, and, if brought in competition with Finger, must be very damaging to him.    The only difference between this and running a business on his own account absolutely is that of degree or extent.    Again, Hahn says to the questions :

" Q. Where do you take orders ?
" A. Inside of the grocery store.
" Q. And how do you take them ; what are the orders for that you take ?
" A. Well, regular routine of goods they want—groceries, meats, or anything they want."

He also says he calls off orders from the books after they are taken down.    This, he says, he is doing right along.    To a lady customer, who was on her way to Finger's, and who was speaking to him about meats, in front of Horst's store, and who said to him that she could buy much cheaper down there, meaning Finger's, Hahn said :

" The boys ought to be able to sell to you as cheap as anywhere, because I buy it cheap enough for them."

When he said this he stood under the sign first adopted by himself in large letters, " J. H. Hahn & Co.," just above which was the sign, " Park Market Co.," adopted by Horst.

I conclude that the facts bring this case within the spirit and reason of the cases heretofore decided by the most eminent judges. *Richardson* v. *Peacock, 11 C. E. Gr. 40 ; S. C., 1 Stew. Eq. 151, and 6 Id. 597 ; Levy* v. *Walker, L. R. (10 Ch. Div.) 436, 27 Eng. Rep. 6 ; Labouchere* v. *Dawson, L. R. (13 Eq.) 322, 1 Eng. Rep. 711 ; Cruttwell* v. *Lye, 17 Ves. 336.*    I will advise a decree, making the injunction perpetual, with costs.